The next case on the calendar is Genius Holdings v. Google. Marion Harris Good morning, Your Honors. May it please the Court, my name is Marion Harris with prior passion in LLP, counsel for appellant M.L. Genius Holdings, LLC. This Court in NBA v. Motorola proposed a hypothetical fact pattern demonstrating a non-preemptive misappropriation claim. Specifically, this Court posited, and I quote, If the appropriation of facts from one pager to another pager's service were allowed, transmission of current information on NBA games to pagers or similar devices would be substantially deterred because any potential transmitter would know that the first entrant would quickly encounter a lower-cost competitor free-riding on the originator's transmissions. This Court repeated that hypothetical in Barclays Capital v. FlyOnTheWall.com, reinforcing the conclusion that such activity would not be preempted by the Copyright Act. Now, some 20-plus years after NBA, the hypothetical pagers have been supplanted by smartphones and the at-issue NBA ScoreService with the Music Lyrics Transcription Service. The preemption question presented by such hypothetical is unchanged, however, and there is no reason for this Court to respond differently here. The decision in judgment of the District Court should be reversed because it erroneously concluded that the claims asserted by Genius were completely preempted by the Copyright Act. Genius's claims are not preempted, however, because they are qualitatively different from First, Genius's claims seek to protect its substantial investment in its service. Genius invested tens of millions of dollars and employed lyrics associates whose jobs were to prepare accurate and timely transcriptions. They operated a web-based service that aggregated the input and comments of music enthusiasts to create a preeminent source for timely and accurate music lyrics in particularly difficult-to-decipher genres like rap and hip-hop. Again, as pled in the complaint, the lyrics, while the copyrights are owned by music publishers and songwriters, the actual lyrics themselves are not available. Genius and all of the parties to this appeal are licensees of those rights owners, but as a part of receiving that license, do not actually receive the lyrics, leaving each to create them on their own with the expenditure of time, effort, and energy, the very time, effort, and energy we're seeking to protect in our complaint and which the District Court erroneously concluded was preempted. Genius's systems and processes are protected, rather, by its terms of service and the laws  Defendants in the complaint are alleged of stolen music lyrics transcriptions from Genius's service, used those transcriptions in their own products. Did they steal them or did they copy them? Genius's terms of service governed both the manner in which its website is accessed, as well as the uses for which the content appearing on its service may be used. In this case, the defendants are alleged, and it's assumed true of purposes of this proceeding, to have accessed the site for a non-personal use purpose in violation of the terms of service and to have used the content appearing on that service, the music lyrics transcriptions, for their own products, either in the case of Google, incorporating it into its search product and making it appear in information boxes, or in the case of Lyricvine, by including it in its database of lyrics transcriptions and licensing it to others for profit. The Copyright Act provides no remedy for this conduct. This is, this is, the existence of terms of service, the restrictions on the use and access of websites hosting content, is commonplace in Internet businesses. Indeed, some of the very parties here utilize nearly identical terms of service to protect their own products, such as... But isn't it that you're saying you created something because you basically listened to the recordings and obtained their lyrics? This is what your folks heard, and you've put them down on a website. And the view was, to the extent you're claiming anything, you're claiming that work that you created is being stolen by them and that that fits under the copyright law or not at all. I thought that was basically the thrust of the ruling by the judge and what your adversaries are urging here, so why shouldn't we view it that way? It is certainly what the court below decided, and it's to the extent you took copyrighted material and wrote down when they begin the beguine, why don't, once you put it out into the public, why do you have some right to it? You didn't create the lyrics. The right that Genius is exercising here isn't a right in the lyrics. We have no right over the lyrics. I understand that. You, in fact, have a license. That's the only reason you're able to do this. But my point is, once you say, you know, I listened to the music, and this is what I heard, and I'm sharing it online, why do you have... Once you put it out into the public domain, why do you have some rights to it? And why do you have rights that are greater than the copyright owner? To address the questions in turn, we have rights to it because the manner in which we put it out into the world was governed by our terms of service. And I'll distinguish here, I believe it was the Dow Jones case, for example, where the court said that when the ETFs were allowed to be traded, that there was implied authorization that options could be created on their backs. Here, we have a term of service. We state that we're sharing it with the world subject to these terms. And by accessing our website, you agree to that. We are protecting the substantial investment in creating the service. We're making these available. But this is the way that the Internet companies operate. This is neither novel nor different from the way anyone else does. And many contract claims are not preempted. Exactly. And we see, we cite this at length, the Pro CD case. And this is honestly an open question from this court with respect to Forest Park Pictures. There are several features of contract claims that are qualitatively different from copyright act claims. Genius is only... And in Forest Park, there was a reference to the promise to pay, and you don't have that here. So where's the promise that makes this not just a restatement of copyright law? So Forest Park Pictures found that the promise to pay in that case was sufficient. It didn't say that it was necessary to survive preemption and explicitly left open the question of what was, if anything, necessary to survive preemption. Here, the rights you're asserting are only against our contractual counterparties. The complaint in this action pleads that the defendants accessed our website. In fact, in a footnote, we indicate that defendants' own employees using their corporate domains registered for access on our site. So to the extent there were questions about the click-wrap license versus their acknowledgement, the facts we plead are much stronger than that. But here, the terms of service govern the way in which our website is accessed. But it seems to me that your ability to put these lyrics online is a function of the fact that you have a license. So what you're doing is part of the, as they always say in the case law, the bundle of rights that go with the copyright. Now, your adversaries, as I understand it, also have a license. So what they did, though, was instead of sitting there and listening and transcribing the lyrics themselves, they used yours, which you say you can prove because of the way you have something inserted into the code of the website. But the point is, how do either of you have rights except as part of the license right that the copyright holder has given you? And therefore, why isn't this all a copyright dispute? I think it's important to focus on the rights that we are trying to protect here. The rights that we are trying to protect are the substantial investment of time and energy in our service. If, for whatever reason, the defendants found these lyrics on a third-party website, if they picked them up off of a piece of paper on the street, my client has no claim against them and would not have brought a claim against them. They accessed our website, they agreed to our terms of service, and by doing so, agreed to not deprive us of the benefit of our substantial investment. To add insult to injury, the defendants then used the very product created by our processes to compete with us, and we've pled affirmatively to substantially diminish the value of my client's service. Let me try again because I may not have been clear. If, without a license, you had listened to songs and put lyrics online, you would be in violation of the artist's copyright. Are you saying that in those circumstances, if the defendants, with a license from the copyright holder, copied your lyrics, lyrics that you transcribed in violation of the copyright, that you'd have a non-copyright claim against them? First, I would like to say that my client would not engage in that conduct. I thought there was that conduct. That's why you had to get a license. But never mind. Go ahead. Try and answer my question. There would be a claim. My clients may very well, in this hypothetical, be liable to the rights owners for infringement, but they are still entitled, through contract, which the House report in the 76 amendments and again in 90 is recognized, parties are free to contract. This is not meant to supplant all of the abilities to create rights by contract. My clients constructed a terms of service that says by accessing this, you agree you're using it for personal use. If you're not using it for personal use, you must get the express written permission of Genius to use the sweat of our brow. But the preemption, I mean, we're trying to pursue the policies of copyright law and copyright law, and those are something about authors and encouraging creative works and public access. If we accept your argument, your adversary suggests we're undercutting those policies because it gives licensees the ability, especially in the Internet world, where terms of services are easily clicked through and people don't read a lot of them, to impose substantial restrictions on copying that might otherwise be permissible. To respond to that, I think that this case presents fairly unique facts in that the lyrics themselves were never delivered to anyone. The fixing in a medium that took place here was actually the transcriptive act of my client's service. And they're seeking to protect that investment. This isn't like licensing an image, placing it on your website, and then wrapping it in terms of service that make its display or reproduction more onerous than the prime right holder here. We are intentionally protecting only the substantial effort that we put in. This effort can and is protected every day through terms of services. And the notion that Internet companies that are the drivers of content and innovation now can suddenly be faced with a Copyright Act preemption argument by the defendants here to say your entire business model is irrelevant and we can steal from you with impunity is appalling and it is inconsistent with the goals of the Copyright Act. But what they're taking is something they already have a license to. They don't have a license to my client's work. They engaged in none of the hours of work and tens of millions of dollars to create the thing they stole. And that is what we're protecting. That is all that we are protecting. Could you address this sort of hot news theory? I take it that your client's business model involves when a song goes to the top of the charts, you get in there and the community creates lyrics very quickly. That is correct. So it is affirmatively put in our complaint. The provision of timely and accurate music lyrics is important. The Genius website exists by getting eyes on webpages to drive ad revenue. When a new song is released, listeners, particularly in the rap and hip-hop genre in which Genius originally carved its name, they want to see the lyrics. We no longer have inserts into cassettes or CDs that tell us what those lyrics are. So they turn to sources like Genius. They search for these lyrics. The incidence of searching is at its highest at the point of release. We affirmatively plead in the complaint the substantial effect of our pilfered lyrics appearing in the Google search box on our web traffic. It's obvious that at the very point in which our system, which is designed to create timely and accurate lyrics and for which we based our name, is poised to profit from that work, that the defendants pilfer it and then divert the gains to themselves. That's precisely the type of free-writing that the court didn't find in NBA and didn't find in Barkley. And so the distinction you're drawing is you're saying this is not the copyrightable, this is not the lyrics to which someone else owns the rights. This is the fact of the moment in time of the transcription that you're seeking to say you can protect under state law. Exactly, and it's that investment, the investment that INS sought to protect when it articulated the hot news. Isn't that driven by the demand for that information? And it's whenever there is the demand, then comes the request for the information? So what difference does it make if it's on the way, if it's a newspaper story, within one hour of the event? What difference is it not? It's one hour, one day, three days, a week later. You're offering the same service. You're offering something that, at that given moment, the customer is looking for. Precisely, and that given moment overlaps with the release of the sound recording. The moment at which this news, for lack of a better word, is hottest is at the point of release. We affirmatively plead this, and if the defendants would like to controvert the facts of our market, we're happy to go through that process. But this case was removed from Supreme Court, decided on a motion to remand, and appears before Your Honors. There have been no proceedings beyond the pleading. If Your Honors have no further questions, I will say for rebuttal. Thank you. Good morning, Your Honors. I'm Ken Freundlich. I represent Lyric Find, the appellee. With the defendants a lot of time, I'm going to spend a few minutes on the subject matter requirement, and then Mr. Willen, on behalf of Google, will address the general scope requirement with the remaining time. Your Honors, at its core, this is a case that alleges the misappropriation of lyrics that Genius displayed on its website, and then the copying and reproduction of those lyrics by Lyric Find, and the display of lyrics by Mr. Willen's client, Google. But everything in Genius's complaint points to the alleged misappropriation of lyrics, which are just the lyrics themselves in these transcriptions. For instance, in paragraph 2 of the complaint— Well, let me ask you about that. Assuming for purposes of this argument that the lyrics you are publishing were not transcribed by anyone in your organization, but rather were copied from the plaintiffs. Let's assume that the point they argue. Why are you entitled to do that? The lyrics are copyrighted. They're fixed in the sound recording. No, no, but you have a license, but instead of sitting down and transcribing those lyrics yourself, you basically took advantage of the fact that they paid somebody to do that, and you, therefore, didn't have to. Why are you allowed to do that? The subject matter of copyright. We have a license to the lyrics. Absolutely, I understand that. The claim that they bring is preempted because the systems that they're discussing all involve the transcription of the lyrics. That's all the systems and processes they have do. When you secured the license to the lyrics, that was a license to use the lyrics. You weren't handed a copy of the lyrics, right? That's right. You could either have produced a copy of the lyrics yourself, paying someone to do that, and the claim here is that instead you stole the plaintiffs. Why are you allowed to do that? The allegations are that that happened. The lyrics themselves do not belong to Genius. Any claim that they bring, that we took the lyrics, is a claim that's reserved for the copyright holders. But if we took this off the Internet, just to make it simple, and said they had a showroom full of beautiful lyrics, they found them nicely, you couldn't break in and take those lyrics. The lyrics themselves, just the words themselves, don't belong to Genius. I guess what Your Honor may be describing is some bells and whistles that they put around the lyrics, which aren't the lyrics themselves, but the allegations and the complaint are simply and repeatedly that there was a misappropriation, copying and display of the lyrics. And so the Copyright Act reserves those rights to decide what to do with the lyrics and not what to do with the lyrics. So if they amend their complaint to say that what you took was their transcription of the lyrics? That's not going to help things because the transcription of the lyrics is the lyrics themselves. But Judge Livingston's hypothetical points out you couldn't have broken into their offices and stolen the piece of paper on which their transcriber put the lyrics before they went online. Well, that is clearly not what this case is. Well, it's the electronic equivalent of it. They're saying you went on their website and stole the lyrics and they can prove it, they claim, because of certain notices or signals that they have in their website. You can tell how technologically savvy I am. In any event, that's the claim. And so it's theft. That's the claim. Yes, Your Honor, but the lyrics themselves are what was taken and the Copyright Act. No, no. What was taken was their transcription of the lyrics. I mean, there are people who you can find online slightly different versions of lyrics because the person hearing it hears it somewhat differently and they may be inaccurate. They're claiming that you didn't just reproduce lyrics. You took the lyrics that they transcribed and inserted them into your website. That's what I understand they say happened. And that central claim, we posit, is preempted by the Copyright Act. Because they're saying that you took something different from what's copyrighted, that you took their work. But there's no claim for that because it's preempted. And under Breyer Patch, it's completely preempted. It's a federal copyright preemption and there's complete preemption so that there's no claim. So the district court was correct in dismissing it. Well, do you think that they have a copyright claim that their license allows them to use the lyrics and how they used them was they transcribed them and they put them on a website. So do they have a copyright claim? They have no copyright claim. They do not own any copyright. They have no claim at all. No claim at all. That's disquieting. The copyright belongs to the copyright owners. Your Honors, the time has passed. Except to the extent it's licensed. They are non-exclusive licensees. I understand. So they do not have standing to bring a copyright claim. Okay. Good afternoon, Your Honor. I'm Brian Willen representing Google. I think I can just start where we were just going. I mean, the issue, they could try to assert a copyright claim. The problem with doing so is that the lyrics or lyric transcriptions, however you want to describe them, are not their property. They're either the property of the rights holders or they are derivative work from what the rights holders actually created to the extent that there are modest variations. That's why they haven't asserted this as a copyright claim because as a matter of law, that claim wouldn't work. But that's a choice that the copyright laws make is to reserve the right to copy, reproduce, display copyrighted works and derivative works based on those copyrighted works to rights holders. And what's going on in this case is an attempt by Genius to essentially stand in the shoes of the rights holders and assert claims for the copying, distribution, and display of copyrighted works that they don't own. They can call them lyric transcriptions if they want, but that doesn't change what they are. So if we take it out of the electronic world and they copied out the lyrics to songs and they printed them and Genius went into their offices one night and stole them, stole those printed copies of the lyrics, you're saying Genius could sell them, no problem. So there's two parts of the preemption analysis. One is the subject matter. One is whether we're talking about copyrighted works. And I think in your hypothetical, we would be. The second issue is, well, is the claim that's being asserted qualitatively different? Is it essentially the same claim? And in a case that involves physical breaking and entering, I think pretty obviously would have different elements that the copyright law doesn't speak to. So that was my first question of your adversary. Is this stealing or copying? And you say it's copying, but they say there are terms of service that were violated, disregarded here. And it seems, I mean, in the case by Easterbrook, he's talking about non-copyrighted material, but he says, well, would you have a claim if somebody goes on to Lexis, who's a student, and takes the material off Lexis? It's not copyrighted material, but then violates the terms of service and gives it to a law firm to sell it, I mean, at a cheaper rate than Lexis would sell it to a law firm. So he violates the provision that says this is for educational use? Right. I'm having a little difficulty seeing why this contract is not sort of like that contract. Okay. Let me address that. So first, with respect to the question of stealing versus copying, I mean, what they allege in their complaint over and over and over and over again is copying. When they say stealing rhetorically, what they mean is copying, distribution, and display. They mean the things very specifically that are. Well, it is copying in the sense that they don't take it off. You don't take it off the website. That's exactly right. It's still there. It's still there. After you do what you've done. Yeah. We'd have a different case, I think, if it was stealing in that sense, of actually taking it off their website. Then I think it would not be hard to say there's something different from a copyright claim. And that leads me to the answer to your question about the contract. So this court in Universal Instruments, Sixth Circuit, in the Wrench v. Taco Bell case, many, many other courts, including a long list of district courts, have said when you're looking at a contract claim under this analysis, the question that you ask is does the contract contain elements different from simply a promise not to infringe, essentially a promise not to do the things that are reserved for copyright owners. That's the question we have to ask. And applied here, just looking at the claims that are asserted in their complaint, the way that they describe the copyright claim, what they have here is a contract that says you cannot copy, you cannot display, and you can't distribute. And then they say what Google and Genius did is copy, display, and distribute. So that's their claim. So we actually have a fairly easy case under those principles, that this is the classic example of a contract that does nothing more. I thought there was something about a promise not for commercial, not to use for commercial uses. Well, so there's the complaint is a little bit schizophrenic about that. There's two different provisions, one that has a commercial purpose provision and the other that doesn't, and they assert both. But even as to commercial purpose, I think that specific issue is resolved by this Court's decision in Jackson, which very clearly holds that a commercial purpose element there in the context of a reticulicity claim is not an extra element that takes a claim that otherwise would be preempted and saves it. The Court, this is Judge McAuliffe's opinion, made very, very clear that commercial purpose is not an extra element, and there's no reason for a different result here. Now with respect to prose TV and many other cases, there are a number one can imagine and one can look at the cases and see there are many different kinds of contracts that exist. Obviously a contract with a promise to pay element, as this Court said in Forest Park, wouldn't be preempted. Likewise, you can imagine, and I think pro se is a case like this, sort of a differential pricing scheme where you have a contract that makes material available under one price for one use and another price for a different use, and a violation of one of those restrictions certainly could fall outside of the bucket of what a preempted contract claim is. But we don't have that here. We have essentially a straightforward contractual provision that says you can't do the things that the copyright law reserves for rights holders, and what they're trying to do through that contract is essentially assert the exact equivalent of copyright claims even though they are not the copyright owner and have no actual rights in the material that we're talking about. So that's fundamentally the problem with the contract claim. I do want to talk very briefly about the hot news issue since it got raised. So as we said, this argument surfaced for the first time on appeal. It was not made at all in the district court. It was not pleaded in their complaint. If you want to plead a claim for hot news misappropriation under state law, that's a cause of action that you have to put in your complaint. They didn't do that. None of their claims actually state the elements of that claim much less invoke the name of the cause of action. So I think just procedurally that claim isn't properly before the court. But even if it were, it's very obvious looking at this court's precedence under hot news misappropriation that this is not a hot news case. So there's two essential requirements that are not met here. The first is that hot news applies to factual information. That's what has always done from INS v. AP to NBA v. Motorola to Barclays v. Fly on the Wall. And the court's been very clear, factual information. This is not factual information. These are song lyrics. These are works of art. Well, there's a fact element. There's a time value of this transcription, and their assertion is that the time that they're transcribing it, the fact is this is what those guys are saying on that sound recording everybody is listening to. So let me say two things about that. One is it's actually not pleaded at all. So they reference, I think, paragraphs 20 and 22 of the complaint. You can go look at those paragraphs. They don't say anything about the importance of the timeliness of this information. So it's not in the complaint. There's a reference in the complaint, and I think this is interesting. They talk about a Selena Gomez song that was allegedly a paradigm case of how the problems that our activities caused for them. Well, there was in the complaint what they allege is a lag of, I think it's about two weeks between the release of the song and the time that the lyrics showed up on Google search results. Well, in the Moody's case, this court's decision from 1986, the court held as a matter of law that a 10-day gap between when the information was published on the defendant's side versus when the plaintiff published it was too long as a matter of law to establish hot news misappropriation. So here, what they've pleaded even is beyond that. But that's just one thing, right? The actual claim that they're asserting is a claim for all lyrics that they say were copied, including lyrics from songs that are 10, 15, 20, 100 years old. So we're talking about song lyrics. We're talking about something that, by its nature, is a timeless and essential work of art. This is what Judge Sweet said in Naxos, that the hot news misappropriation doctrine just cannot and does not apply to works of art, one, because they're not factual and they are protected by copyright, and two, because the timeliness element that is the essence of the rule just doesn't make sense applied to these works. I would also just say, in closing, that, like, if this were the claim that they were asserting, this claim would be extraordinary, and you got over the hurdle of it not applying to songs at all. It would be an extraordinarily narrow claim because it could only, in theory, apply to the appropriation of newly released works. Now, of course, they don't even claim that this is ongoing activity. This is retrospective. So the number of songs, if any, that fit that paradigm, certainly in the complaint, is zero. I don't know what they could theoretically allege, but I don't think it's much more than zero. So this claim doesn't work, but I don't think the Court really needs to address it because it's been waived. If there are no further questions, I will... Your rebuttal. Thank you. I want to start by making sure the Court is aware that defendants, Google LLC, and Lyric Find have entered into a license agreement since 2016 to license for money the very... the transcriptions that Lyric Find maintains in its database, the very value that my client seeks to protect with its terms of service. Do you say this misconduct is continuing or is it ceased? I can tell you that it is continuing. There is a watermark that is not public. It continues to this day. I'm sorry. I didn't hear you. There is a watermark that is not public. The activity complained of in the complaint continues to this day. Again, as opposing counsel's arguments about how big of a problem this is, great. That's a quantum of damages problem. That's not whether my claim is a preempted problem. As to the sufficiency of the pleading, we pled this case in state court pursuant to the CPLR. We pled a claim for unfair competition under a misappropriation theory where the complaint affirmatively pleads that the provision of timely and accurate music lyrics is critical to the market. Moody's, securities market, completely different market. And this Court, since Computer Associates, has evaluated both the factual and legal theories of the claim in assessing whether it is qualitatively different. The defendants would have this Court adopt and enact robotic claims-based dismissal of it. This is a contract claim. This is nothing more than it's a contract, therefore it's preempted. That isn't what this Court has done. This Court has struggled for volumes to ascertain whether a claim is qualitatively different. And we've met that hurdle. At the end of the day, that is the test. First, with regards to subject matter, we submit that we are protecting our service and the substantial investment in that service. With respect to the rights that we are seeking to assert here, we are seeking to protect our investment and address, among other things, the defendant's unlawful and contractually violated use of that content, which is not an exclusive right under the Copyright Act. We clearly satisfy either the exception or the scope requirement with respect to preemption. And these claims should be allowed to proceed. Thank you, Your Honors. Thank you all. Nicely done. And we will take the matter under advisement. That's the last case on the calendar to be argued this morning, so I'll ask the clerk to adjourn the Court. Court is adjourned. Thank you.